James D. Gilson (5472)
Cole P. Crowther (16432)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 South Main, Suite 2400
Salt Lake City, Utah 84110-4050
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
james.gilson@dentons.com
cole.crowther@dentons.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MOUNTAIN COUNTRY FOODS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>GREAT WEST-TEEUWISSEN, LLC f/k/a Van Hessen Great West Holding, LLC, a Colorado limited liability company; and GREAT WEST, LLC, a Colorado limited liability company,<br><br>Defendants. | **COMPLAINT**<br><br>Judge: _____<br><br>Case No. _____ |

Plaintiff Mountain Country Foods, LLC ("Plaintiff" or "MCF"), by and through counsel, hereby complains against Defendants Great West-Teeuwissen, LLC, formerly known as Van Hessen Great West Holding, LLC, and Great West, LLC (collectively, "Defendants" or "Great West") and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      MCF is a Delaware limited liability company with its principal place of business in Spanish Fork, Utah.

2.      On information and belief, Defendant Great West-Teeuwissen, LLC is a Colorado limited liability company with its principal place of business in Highlands Ranch, Colorado.

3.      On information and belief, Defendant Great West, LLC is a Colorado limited liability company with its principal place of business in Highlands Ranch, Colorado.

4.      On information and belief, Great West, LLC is a subsidiary of Great West-Teeuwissen, LLC.

5.      Based on their contact with Plaintiff, Defendants have availed themselves of this forum and should reasonably have expected to be hailed into the courts located in the State of Utah in a dispute between them and Plaintiff.

6.      This Court has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.

7.      Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

*Background*

8.      MCF is a manufacturer of pet food, specializing in pet treats.

9.      The J.M. Smucker Company ("JMS") is one of MCF's largest customers for pet food and treats and routinely orders MCF's pet products.

10.     Great West is a wholesaler of raw animal meat and has meat processing facilities throughout the country, including York and Grand Island, Nebraska.

11.     Since at least 2007, Great West has supplied MCF with processed animal meat from its Nebraska facilities for the manufacturing of pet food and treats.

12.     On multiple occasions, Great West has provided MCF with a "Letter of Guarantee" stating that "ongoing quality control program is in place to ensure that the standards for production . . . and sanitation are maintained" and that "all products are wholesome and in good condition."

*FDA Letter Regarding Gullet Meat*

13.     On March 27, 2017, the Food and Drug Administration ("FDA") sent a notice to the members of the pet food industry, including MCF.

14.     On information and belief, Great West also received the FDA's notice on or about March 27, 2017.

15.     The March 2017 letter warned that dogs exposed to thyroid hormones were exhibiting symptoms of hyperthyroidism, which is a life-threatening disease.

16.     The cause of increased levels of the thyroid hormone in dogs was attributed, in part, to the use of livestock gullets in pet food or treats.

17.     The FDA emphasized that the "[o]nly way to be certain that there are no traces of thyroid in pet food is to avoid the use of livestock gullets."

18.     The FDA prohibited further use of gullet meat in pet food.

19.     On information and belief, as of March 27, 2017, Great West knew that the use of gullet meat was prohibited in the manufacturing of pet food.

20.    Moreover, in an ingredient specification sheet to Great West dated September 26, 2016, MCF had expressly stated that gullet meat was not to be included in Great West's beef trimming products.

*MCF's Requests for Confirmation*

21.    On or about August 24, 2017, MCF sent a letter to each of its beef suppliers, including Great West, reiterating that gullet meat is prohibited in beef material supplied to MCF.

22.    MCF further requested written confirmation from its suppliers that they are not providing MCF with any gullet meat.

23.    Great West did not respond to MCF's August 2017 letter.

24.    On or about February 13, 2018, MCF sent a second request to Great West seeking confirmation that it is not using gullet meat in the animal meat it provides to MCF.

25.    On or about February 14, 2018, Great West responded in a letter signed by its the Commercial Manager, Wayne Partridge, stating that gullet meat is not sold to MCF and that MCF's specifications are on file and being followed.

26.    On or about March 30, 3018, Doug Haycock, an authorized agent of Great West, sent an email to MCF regarding Great West's use and discontinued use of gullet meat.

27.    Mr. Haycock stated that Great West suspended the processing of gullet meat at its facilities in or about March 2017—around the time of the FDA's letter.

28.    However, Mr. Haycock acknowledged that Great West was currently processing gullet meat at its Grand Island facility for pharmaceutical purposes, but stated that all other facilities of Great West had suspended the use of gullet meat in the meat processed for MCF since about May 2017.

*JMS's Recall Claim*

29.    Between May and October 2017, MCF ordered certain batches of raw animal meat from Great West to be used in the manufacturing of pet food and treats (collectively, the "Batches"), as follows:

      (a)    Batch No. 1357 was received by MCF on May 15, 2017;

      (b)    Batch No. 1387 was received by MCF on May 18, 2017; and

      (c)    Batch No. 2867 was received by MCF on October 13, 2017.

30.    The Batches came from Great West's York, Nebraska facility.

31.    Specifically, the Batches were used for the manufacturing of pet food products that were sold to JMS for its trademark Milo's Kitchen® between May and November 2017 (collectively, the "JMS Order").

32.    On or about March 19, 2018, JMS notified MCF that the FDA reported elevated levels of the thyroid hormone in the beef products contained in the JMS Order.

33.    Shortly thereafter, JMS submitted a recall claim to MCF to recall the JMS Order.

34.    JMS continued to supply MCF with documentation regarding the recall and the damages JMS suffered through March 2019.

35.    Upon further investigation, MCF discovered that the reason for the elevated thyroid hormone in the JMS Order was due to the fact the Batches contained gullet meat.

36.    MCF only used the Batches provided by Great West to manufacture the JMS Order.

37.    After MCF confronted Great West, Mr. Haycock had a telephone conversation with MCF where he acknowledged that Great West processed gullet meat for other customers and that their processing equipment was not cleaned before processing the Batches for MCF.

38.    Mr. Haycock told MCF that gullet meat was likely included in the Batches due to Great West's failure to clean its processing equipment.

39.    But for Great West's inclusion of gullet meat in the Batches, JMS would not have recalled the JMS Order.

40.    At the time MCF ordered the Batches from Great West, Great West knew that gullet meat was prohibited in pet food and should not have been included in the Batches.

*MCF's Damages*

41.    As a result of Great West's conduct, in December 2018 MCF had to pay JMS's recall claim in the form of credits and refunds in the amount of $1,311,211.14, however Great West has failed and refused to reimburse MCF this amount despite repeated demands that it do so.

42.    MCF has suffered damages in the following categories and in the following amounts:

(a)    Customer Deductions:  $880,826.91

(b)    Consumer Refunds:  $17,829.42

(c)    Lost Profits:  $220,766.00

(d)    Loss of Inventory:  $14,839.86

(e)    Disposal Costs:  $4,406.29

(f)    Iodine Testing Costs:  $121,259.98

    (g)      Startup Verification:  $3,135.36

    (h)      CVSH Lost Sales:  $48,147.32

43.      The foregoing damages suffered by MCF total at least $1,311,211.14.

44.      MCF's damages were not fully realized until at least March 2019.

## FIRST CLAIM FOR RELIEF
### (Negligence)

45.      The foregoing paragraphs of this Complaint are incorporated herein by reference.

46.      At all relevant times, Great West owed MCF a duty of care with respect to the Batches it sold to MCF, including the duty to ensure that none of the animal feed products that it supplied to MCF contained gullet meat.

47.      Great West breached its duty of care by, among other things, providing MCF with the Batches that contained gullet meat and failing to properly clean its processing equipment before processing the Batches for MCF.

48.      Great West's breach was the direct and proximate cause of MCF's injuries and damages.

49.      As a result of Great West's negligence, MCF has been damaged in an amount to be proven at trial, but not less than $1,311,211.14, including all reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

50.      The foregoing paragraphs of this Complaint are incorporated herein by reference.

51.     MCF and Great West have a contractual relationship whereby Great West sells processed animal meat to MCF for the manufacturing of pet food and treats, constituting a valid and binding contract between MCF and Great West.

52.     By engaging in the conduct described in the foregoing paragraphs, Great West has materially breached its contractual obligations to MCF by, among other things, providing MCF with gullet meat despite knowing that gullet meat is prohibited in the manufacturing of pet food products.

53.     Prior to Great West's material breach, MCF performed fully each and every material condition, covenant, and obligation imposed upon it under the Parties' contract.

54.     As a result of the material breaches set forth above, MCF has been damaged in an amount to be proven at trial, but not less than $1,311,211.14, plus MCF's reasonable attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
(Breach of the Implied Warranty of Merchantability)

55.     The foregoing paragraphs of this Complaint are incorporated herein by reference.

56.     Great West is a merchant with respect to the processing and distribution of raw animal meat.

57.     Thus, there exists an implied warranty that the Batches Great West sold to MCF shall be merchantable under Utah Code § 70A-2-314.

58.     For the reasons set forth above, the Batches Great West sold to MCF were not merchantable.

59.     Specifically, the Batches contained gullet meat which rendered the Batches unfit for the ordinary purpose of being pet food.

60.     As a result of Great West's breach of the implied warranty of merchantability, MCF has been damaged in an amount to be proven at trial, but not less than $1,311,211.14, including all reasonable attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
(Breach of the Implied Warranty of Fitness for a Particular Purpose)

61.     The foregoing paragraphs of this Complaint are incorporated herein by reference.

62.     Utah Code § 70A-2-315 provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

63.     At the time Great West agreed to sell MCF the Batches, Great West knew that MCF was using the Batches for pet food and that the Batches could not contain gullet meat.

64.     Further, because Great West is a merchant with respect to processing and distributing raw animal meat, it had reason to know of the particular purpose for which MCF ordered the Batches.

65.     Great West knew or had reason to know that MCF was relying on Great West's skill or judgment to provide MCF with Batches that did not contain gullet meat.

66.     The Batches Great West provided to MCF were substandard and contained gullet meat, which is prohibited from including in pet food and resulted in JMS's recall claim.

67.     By providing MCF with gullet meat and for the reasons set forth above, Great West breached the implied warranty of fitness for a particular purpose.

68.     As a result of Great West's breach of the implied warranty of fitness for a particular purpose, MCF has been damaged in an amount to be proven at trial, but not less than $1,311,211.14, including all reasonable attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Strict Product Liability)

69.     The foregoing paragraphs of this Complaint are incorporated herein by reference.

70.     The Batches Great West sold to MCF were defective and unreasonably dangerous when they were sold to MCF.

71.     More specifically, the Batches were unreasonably dangerous as they contained gullet meat at the time they were sold to MCF.

72.     Great West knew the risks of providing MCF with gullet meat as the Batches would be used for pet food.

73.     Great West did not inform MCF that the Batches it sold to MCF contained gullet meat, and no other warning was provided to MCF that the Batches might contain gullet meat.

74.     The defects in the Batches were a direct and proximate cause of MCF's damages.

75.     Based on the foregoing, Great West is strictly liable for the damages sustained by MCF, in amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, MCF prays for judgment against Great West as follows:

A.      An award of damages (in the categories and amounts prayed for above) that is ultimately to be determined at trial, but not less than $1,311,211.14, plus pre-and post-judgment interest as allowed by law;

B.      All costs and fees associated with the maintenance of this action, including

reasonable attorneys' fees, as allowed by law; and

C.      Such other and further relief as the Court deems just and equitable.

DATED:  January 19, 2021.

DENTONS DURHAM JONES PINEGAR P.C.


By:      _/s/ James D. Gilson_____
          James D. Gilson
          Cole P. Crowther

          *Attorneys for Plaintiff*

**Serve Defendant Great West-Teeuwissen, LLC at:**

Great West-Teeuwissen, LLC
c/o Douglas R. Haycock (Registered Agent)
8950 Barrons Blvd., Ste. 102
Highlands Ranch, CO 80129

**Serve Defendant Great West, LLC at:**

Great West, LLC
c/o Douglas R. Haycock (Registered Agent)
8950 Barrons Blvd., Ste. 102
Highlands Ranch, CO 80129