IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MOUNTAIN COUNTRY FOODS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GREAT WEST-TEEUWISSEN, LLC and GREAT WEST, LLC,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:21-cv-00033-JNP-DAO<br><br>District Judge Jill N. Parrish |

Before the court is plaintiff Mountain Country Foods, LLC's (MCF's) motion for summary judgment. ECF No. 30. The court DENIES the motion.[1]

## BACKGROUND

MCF manufactures pet treats. Great West-Teeuwissen, LLC and Great West, LLC (collectively, Great West) were among its suppliers of processed meat used to make the pet treats. One of the products that MCF purchased from Great West was mechanically deboned beef, commonly known in the industry as MD beef. As this name might suggest, MD beef can include any number of different kinds of meet industrially extracted from slaughtered cattle. One of the types of meat that MCF often included in its MD beef product was gullet meat.

MCF and Great West did not have a written contract. Nor did MCF submit purchase orders when it wanted to by MD beef from Great West. Instead, someone from MCF would call or email Great West and request a shipment by a certain date.

---

[1] MCF requested a hearing on the motion. The court has determined that a hearing is not necessary and decides the motion on the briefs. *See* DUCivR 7-1(g).

On March 27, 2017, the FDA issued a notice of a possible link between hyperthyroidism in dogs and products containing animal gullets from which the thyroid glands had not been completely removed. The notice provided two suggestions to manufacturers to insure that that their products did not contain thyroid hormones. First, the notice suggested: "One way to be certain that there are no traces of thyroid in pet food is to avoid the use of livestock gullets." Second, the notice recommended that suppliers and manufactures ensure that thyroid glands are completely removed from gullets used to make pet food:

> *How can I make sure that there are no thyroid glands in my product?*
>
> Suppliers can ensure that they have fully removed thyroid glands from gullets before providing them to manufacturers. . . .
>
> Manufacturers can carefully assess their suppliers' practices and take steps to ensure that they are receiving raw materials and ingredients that do not contain thyroid hormone secreting tissue.

After the FDA issued this notice, MCF purchased three shipments of MD beef from Great West. These three shipments were received on May 15, 2017, May 18, 2017, and October 13, 2017. MCF used the MD beef to manufacture dog treats and then sold them to wholesalers, such as the JM Smucker Company (Smuckers).[2] On March 22, 2018, Smuckers issued a recall for dog treats that it had purchased from MCF because the products potentially contained elevated levels of thyroid hormones. MCF credited Smuckers $1,311,211.14 for damages caused by the recall.

MCF sued Great West, claiming that it should be liable for the amount that it credited to Smuckers. MCF asserted claims for negligence, breach of contract, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and strict

---

[2] Smuckers is also one of the owners of MCF.

products liability. Under its breach of contract claim, MCF alleged that after the March 27, 2017 FDA letter, it formed an oral contract with Great West not to include gullet meat in the MD beef that it sold to MCF. It further alleged that Great West breached this contract by including gullet meat in the shipments delivered in May and October of 2017. Under its warranty claims, MCF alleged that Great West also breached implied warranties of merchantability and of fitness for a particular purpose by including gullet meat in the May and October shipments.

Now before the court is MCF's motion for summary judgment on its breach of contract and implied warranty claims. It argues that it is undisputed that it had an oral contract with Great West, that the terms of the contract precluded Great West from including gullet meat in its MD beef product, and that Great West breached the contract by including gullet meat in the shipments it sold to MCF. MCF also argues that the undisputed material facts show that all shipments of MD beef made after the March 27, 2017 FDA notice were accompanied by an implied warranty that the product did not include any gullet meat. MCF contends that there is no dispute that Great West breached this warranty by including gullet meat in the May and October shipments.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

**I.    CONTRACT CLAIM**

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–31 (Utah 2014) (citation omitted).[3] MCF argues that the undisputed material facts show that it prevails as a matter of law on each of the elements of its contract claim. It asserts that it formed an oral contract with Great West in late March 2017 that all future shipments of MD beef would not contain gullet meat. MCF contends that Great West breached this contract by delivering shipments of MD beef that contained gullet meat on May 15, 2017, May 18, 2017, and October 13, 2017.

The court finds, however, that disputed issued of material fact preclude summary judgment. First, there is a dispute of fact as to whether the parties had discussed the gullet meat issue before the May 2017 shipments were sent. Around the time that Smuckers issued the recall for the dog treats, Brian Ford, who was the operations manager of MCF, asked Douglas Haycock, the managing director of Great West, to summarize a telephone conversation they had regarding Great West's use of gullet meat in its MD beef product. On March 30, 2018, Haycock sent an email to Ford outlining the timeline for when it had discontinued using gullet meat. Haycock stated: "Based on our conversation in the May/June 2017 timeframe, we quit using gullet meat in regular MDB [MD beef]." Almost a year later, on March 11, 2019, Ford sent a follow-up email with the following request: "Can you take a look at this and verify that we talked in March 2017 about

---

[3] Neither party conducted a choice-of-law analysis to determine which state's law applies to the breach of contract claim or the warranty claims. Because they both cite cases applying Utah law, the court also looks to Utah law.

this." Fifteen minutes later, Haycock responded: "Yes, we definitely talked about this in March 2017." In his deposition, Haycock testified that when he responded to the March 11, 2019 email, he did not remember precisely when the conversation happened and that he agreed to Ford's timeline because Haycock believed that it would be helpful to Ford.[4] Haycock further testified that "after further though and consideration" he believed that he did not have a conversation with Ford about gullet meat until late May 2017.

Although, there are certainly inconsistencies in Haycock's account of when he was told that MCF did not want gullet meat in the MD beef that it purchased from Great West, the court may not resolve those inconsistencies in the context of summary judgment. Both Haycock's May 30, 2018 email and his deposition testimony call into question whether MCF told Great West that it did not want gullet meat before the two May 2017 shipments were sent to MCF. This evidence creates a dispute of material fact that precludes summary judgment on the contract claim for these two shipments.

Second, there are disputes of material fact as to whether the October 2017 shipment of MD beef contained gullet meat. In his May 30, 2018 email, Haycock represented that Great West discontinued using gullet meat "as of May/June 2017." In his deposition, Haycock also testified that the October 2017 shipment did not contain gullet meat. This evidence creates a dispute of material fact as to whether Great West breached any oral agreement as to the October 2017 shipment.

In short, MCF has failed to meet its burden of showing that no disputed facts preclude summary judgment in its favor on the breach of contract claim.

---

[4] MCF did not sue Great West until January 2021.

## II. WARRANTY CLAIMS

The Utah Code provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UTAH CODE § 70A-2-314(1). This implied warranty of merchantability includes guaranties that the goods sold can "pass without objection in the trade" and "are fit for the ordinary purposes for which such goods are used." *Id.* § 70A-2-314(2). Additionally, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." *Id.* § 70A-2-315.

MCF argues that the FDA's March 27, 2017 notice regarding thyroid hormone found in two brands of dog food established an industry standard precluding the use of gullet meat to manufacture products consumed by dogs. If further contends that it is entitled to summary judgment on its warranty claims because Great West's May 2017 shipments of MD beef indisputably breached the implied warranties of merchantability and for fitness for a particular purpose by containing gullet meat.[5] The court concludes, however, that the warranty claims may not be resolved on summary judgment.

The question at the heart of MCF's warranty claims is whether the FDA notice established a clear industry standard that products containing gullet meat were no longer fit for use to manufacture dog treats, creating an implied warranty that the MD beef sold by Great West did not

---

[5] MCF's summary judgment motion for the warranty claims fails as to the October 2017 shipment because there is a dispute of material fact as to whether that shipment contained gullet meat.

6

contain gullet meat. This is a mixed question of law and fact for the jury. *See Pac. Marine Schwabacher, Inc. v. Hydroswift Corp.*, 525 P.2d 615, 619 (Utah 1974) ("The question of the existence of a warranty and whether the warranty was breached is ordinarily one for the trier of fact."). Mixed questions of law and fact can only be resolved on summary judgment where "reasonable minds cannot differ" on the answer to the mixed question. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *accord Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998). Thus, in order to prevail on summary judgment, MCF must show that no reasonable juror could disagree with its contention that in May 2017, gullet meat was commonly viewed in the pet food industry as unfit for use in dog treats.

MCF has not satisfied this exacting standard. The FDA notice, which is the centerpiece of the warranty claims, stated that three dogs had been diagnosed with hyperthyroidism and that testing of the canned dog food they had consumed revealed the presence of active thyroid hormone. The FDA stated that the likely source of the hormone was gullets from which the thyroid glands had not been completely removed before being added to dog food. The notice suggested two methods for preventing thyroid hormone contamination. First, manufacturers could avoid using livestock gullets. Second, suppliers could ensure that the thyroid glands are completely removed from the gullets and manufacturers could assess their supplier's practices to confirm compliance with these practices.

The FDA notice is not sufficient evidence to prove that reasonable minds could not differ regarding the existence of an implied warranty that MD beef did not contain gullet meat six weeks after the notice was issued. The notice did not ban gullet meat. It identified a potential problem with thyroid hormone contamination and suggested potential solutions. Notably, one of the proffered solutions was to ensure that thyroid glands were completely removed from gullets before

7

processing them for use in pet treats. Thus, even the FDA notice contemplated the continued use of gullets in pet food and treats. Under these circumstances, the issue of whether an implied warranty existed is a jury question that may not be resolved on summary judgment.

## CONCLUSION

For the above-stated reasons, the court denies MCF's motion for summary judgment.

DATED September 28, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge