IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MOUNTAIN COUNTRY FOODS, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>GREAT WEST-TEEUWISSEN, LLC and<br>GREAT WEST, LLC,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE EXPERT TESTIMONY<br><br>Case No. 2:21-cv-00033-JNP-DAO<br><br>District Judge Jill N. Parrish |

Before the court is plaintiff Mountain Country Foods, LLC's (MCF's) motion in limine to exclude the expert testimony of John Schultz. ECF No. 29. The court GRANTS IN PART and DENIES IN PART the motion. [1]

## BACKGROUND

MCF manufactures pet treats. Great West-Teeuwissen, LLC and Great West, LLC (collectively, Great West) were among its suppliers of processed meat used to make the pet treats. One of the products that MCF purchased from Great West was mechanically deboned beef, commonly known in the industry as either MD beef or MDB. As this name might suggest, MD beef can include any number of different kinds of meet industrially extracted from slaughtered cattle. One of the types of meat that MCF often included in its MD beef product was gullet meat.

On March 27, 2017, the FDA issued a notice of a possible link between hyperthyroidism in dogs and products containing animal gullets from which the thyroid glands had not been

---

[1] MCF requested a hearing on the motion. The court has determined that a hearing is not necessary and decides the motion on the briefs. *See* DUCivR 7-1(g).

completely removed. The notice provided two suggestions to manufacturers to insure that that their products did not contain thyroid hormones. First, the notice suggested: "One way to be certain that there are no traces of thyroid in pet food is to avoid the use of livestock gullets." Second, the notice recommended that suppliers and manufactures ensure that thyroid glands are completely removed from gullets used to make pet food:

> *How can I make sure that there are no thyroid glands in my product?*
>
> Suppliers can ensure that they have fully removed thyroid glands from gullets before providing them to manufacturers. . . .
>
> Manufacturers can carefully assess their suppliers' practices and take steps to ensure that they are receiving raw materials and ingredients that do not contain thyroid hormone secreting tissue.

After the FDA issued this notice, MCF purchased three shipments of MD beef from Great West. These three shipments were received on May 15, 2017, May 18, 2017, and October 13, 2017. MCF used the MD beef to manufacture dog treats and then sold them to wholesalers, such as the JM Smucker Company (Smuckers).[2] On March 22, 2018, Smuckers issued a recall for dog treats that it had purchased from MCF because the products potentially contained elevated levels of thyroid hormones. MCF credited Smuckers $1,311,211.14 for damages caused by the recall. A dispute arose between MCF and Great West regarding the recall. MCF alleged that Great West was liable for the damages because it wrongfully supplied MD beef containing gullet meat, which caused the recall.

Great West's insurer, Liberty Mutual Global Retail Markets, hired John Schultz, an expert on food quality and safety, to investigate MCF's allegations. On February 3, 2020, Schultz

---

[2] Smuckers is also one of the owners of MCF.

submitted a report to Liberty Mutual on the results of his investigation. In the report, Schultz stated

that the purpose of his investigation was to "determine if [Great West] knowingly sold MDB

containing gullet meat with the thyroid gland still intact to [MCF]." In conducting his

investigation, Schultz consulted documents, emails, and bills of lading provided by MCF. Schultz

listed the following conclusions from his investigation:

> 1. It is the expert opinion of Mr. John Schultz, Senior Food Safety Rimkus Consultant, that there has been no proof presented by MCF that the MDB shipped to MCF after the March 2017 FDA announcement by [Great West] contained thyroid glands.
>
> 2. All the MDB shipped by [Great West] to MCF was received and accepted for use as animal by-products for the manufacture of pet food.
>
> 3. Gullets were removed from the MDB and sold for pharmaceutical purposes.

(Footnote omitted).

In January 2021, MCF sued Great West. On June 9, 2022, Great West disclosed Schultz as

an expert. On July 14, 2022, Schultz submitted a supplemental report of his findings to Liberty

Mutual after reviewing additional documents disclosed during the litigation and transcripts of

deposition testimony. The updated report contained the following conclusions:

> 1. Milo's Kitchen Pet Treats recall announcement reads: a voluntary recall of shipments of dog treats relating to the possibility of elevated levels of thyroid hormone. "Limited Shipments of Two Varieties of Milo's Kitchen Dog Treats Voluntarily Recalled Due to Potentially Elevated Levels of Thyroid Hormone", [sic] per the company's announcement March 22, 2018:
>
>> a. 'Potential elevations' is the term that indicates that it may have been due to this issue. If the raw materials or finished pet products were not analyzed there is no definitive proof the raw materials came from [Great West]. MDB may have been traced back to Mountain Country Foods, but no definite proof that [Great West]

product had elevated thyroid hormone or that the raw material contained any thyroid material.

2. Revised specifications for MDB were completed on April 18, 2018, and approved to be sent out to raw material suppliers by Brian Ford.

3. The FDA published a notice on March 27, 2017, stating that thyroid hormone elevated amounts in dogs that became sick were possibly due to possible elevated thyroid hormone levels. "The source of thyroid hormones is likely the use of gullets from which the thyroid glands were not completely removed before adding to pet food or treats."

4. As part of the FDA notice discussed in #3, "Manufacturers can carefully assess their suppliers' practices and take steps to ensure that they are receiving raw materials and ingredients that do not contain thyroid hormone secreting tissue." The responsibility ultimately is the responsibility of MCF and all testing of raw materials is the sole responsibility and cost of the manufacturing facility, MCF, not the raw material producing company [Great West].

5. No chemical analysis was completed on raw materials to confirm that any of the raw material, MDB, supplied by [Great West] to MCF contained the thyroid hormone.

   a. There are several important pieces of information that need to be addressed

      i. The percentage (%) of the gullet that may contain a portion of the thyroid gland

      ii. What amounts, percentage, of the total ground pet product was gullet meat

6. It has been discussed that [Great West] did not conduct a "complete breakdown cleaning" of equipment between the processing or gullet meat and MDB not containing gullet meat. Whole gullets were never used, per Mr. Douglas Haycock for MDB products. The standard in the meat industry is as long as processing the same species of animal, a complete breakdown cleaning is not mandatory. USDA inspectors are in the plant during the processing and found no apparent violation in the GWBprocess [sic].

4

7.  It is unclear if any of the MDB from [Great West] was used in any other finished pet products not [sic] that were recalled.

8.  All MDB does not contain gullet meat. Other companies purchasing the MDB from [Great West] were Nestle, Mars Petcare, Smucker's, and Simmons.

9.  By April 2017, all gullet meat was not used in MDB by MW [sic] in their products, it was used for the collection of the cartilage only, and the remaining product was rendered.

10. Based on the information in a letter from [Great West] to Simmons on March 13, 2017, it states that they 'cannot and do not guarantee that 100% of the thyroid gland will be removed in every case'. [sic] Due to the processing of gullet meat 'residual levels of thyroid gland remaining in the gullet meat when this product is processed' is possible.

(Internal citations to documents omitted).

On July 21, 2022, Great West served Schultz's February 2020, and July 2022 investigation reports on MCF as part of expert disclosures for Schultz. In so doing, Great West effectively repurposed Schultz's investigation reports, which were originally submitted to Liberty Mutual, as expert reports for this litigation. MCF filed a motion in limine to exclude the opinions disclosed in these reports.

## ANALYSIS

MCF argues that Schutz's expert opinions, as disclosed in the two investigation reports, should be excluded for three reasons. Its principal contention is that Schultz's opinions should be excluded because they would not be helpful to the jury. MCF also argues that his opinions are inadmissible because his expert report was initially prepared to determine insurance coverage. Finally, MCF argues that Schultz's opinions contain improper legal conclusions. The court addresses each of these arguments in turn.

I.    **ASSISTANCE TO THE JURY**

Rule 702 of the Federal Rules of Evidence imposes a "gatekeeping obligation" on the court to determine the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). "A two-part test applies to determine admissibility." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). "First, the district court must determine 'whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion.'" *Id.* (citation omitted). "Second, the court 'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Id.* (citation omitted). MCF does not dispute that Schultz is qualified as an expert on food safety. Instead, it contends that Schultz's opinions should be excluded under the second step because they will not assist the jury.

An expert may provide opinion testimony only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a); *see also Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) ("[U]nder Fed.R.Evid. 702 'the "touchstone" of admissibility is helpfulness to the trier of fact.'"). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (citation omitted). But when an expert "does no more than 'disgorge factual knowledge to the jury,' the expert is 'no longer aiding the jury in its factfinding.'" *United States v. Garcia*, 793 F.3d 1194, 1213 (10th Cir. 2015) (citation omitted) (cleaned up).

Because Schultz prepared his reports in his role as an investigator for Great West's insurer, it is not surprising that many of his opinions are bare recitations of facts gleaned from his review

of the evidence. Conclusions 2 and 3 on his February 2020 report, for example, merely state that MCF accepted the shipments of MD beef shipped by Great West and that Great West sold the cartilage extracted from the gullets for pharmaceutical purposes. Conclusions 2, 5, and 8 of the July 2022 report also recite facts regarding when a specification sheet was sent to Great West, the absence of chemical testing on the MD beef delivered, and a list of other companies that purchased MD beef from Great West. Additionally, in conclusions 1, 3, 4, and 10 of the July 2022 report, Shultz merely quotes portions of documents, including the Smuckers recall notice, the FDA notice, and a letter authored by Great West.

These recitations of "factual knowledge" are not proper expert opinions that would be helpful to the jury. *See Garcia*, 793 F.3d at 1213. "[E]xperts may not merely parrot or recite factual evidence, without offering a valid expert opinion based on such evidence." *Graystone Funding Co., LLC v. Network Funding, L.P.*, 598 F. Supp. 3d 1228, 1249 (D. Utah 2022) (citation omitted). Nor does quoting the text of documents constitute an expert opinion. *See Triad Cap. Mgmt., LLC v. Priv. Equity Cap. Corp.*, No. 07 C 3641, 2010 WL 10076450, at *3 (N.D. Ill. Nov. 22, 2010) ("A jury can do simple math and read."). Because Schultz does not express any opinions based on his expertise in food quality and safety regarding the meaning of the documents or the facts he cites, these conclusions would not be helpful to the jury. *See United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate his opinion . . . . Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury . . . ." (cleaned up)).

In four of Schultz's conclusions, he goes beyond merely reciting facts and interprets or comments on the quality of the evidence that he reviewed. For example, in conclusion 1 of the

February 2020 he states his opinion that "there has been no proof presented by MCF that the MDB shipped to MCF after the March 2017 FDA announcement by [Great West] contained thyroid glands." Additionally, in conclusions 1.a, 7, and 9 of the July 2022 report, Schultz similarly weighs and interprets the evidence for various propositions related to this case, including his conclusion that Great West had stopped using gullet meat by April 2017. "But an expert is not to opine on the weight of the facts or take a principal role in sifting, weighing and reciting them for the jury." *Rowe v. DPI Specialty Foods, Inc.*, No. 2:13-cv-00708-DN-DJF, 2015 WL 4949097, at *5 (D. Utah Aug. 19, 2015), *aff'd,* 727 F. App'x 488 (10th Cir. 2018); *accord Graystone*, 598 F. Supp. 3d at 1247; *Deem v. Baron*, No. 2:15-cv-00755-DS, 2020 WL 114138, at *13 (D. Utah Jan. 10, 2020) (experts may not "attempt to lend credibility, as experts, to certain evidence relevant to disputed issues of fact" (citation omitted)). Because Schultz did not use his expertise in food safety to arrive at these conclusions, they would not be helpful to a jury.

The only proper expert opinion expressed by Schulz is found in conclusion 6 of the July 2022 report, where he states that "[t]he standard in the meat industry is as long as processing the same species of animal, a complete breakdown cleaning is not mandatory." By describing the standard in the meat processing industry, he states an opinion based on his expertise that could potentially be helpful to the jury. Accordingly, the court excludes all of the opinions expressed in his February 2020 and July 2022 reports except for conclusion 6 of the July 2022 report.

## II.   INSURANCE COVERAGE REPORT

Relying on *KeyBank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, No. CV 09-497-JJB-SCR, 2010 WL 11549698, at *1 (M.D. La. May 7, 2010), MCF argues that the court should exclude the opinions expressed in the investigation reports because they were not originally prepared as expert reports, but rather, as investigation reports for Great West's insurer. But MCF's reliance on

*KeyBank* is unavailing. In that case, the district court concluded that an expert's use of a prelitigation appraisal as an expert report as a "cost-saving measure . . . was not unreasonable." *Id.* at *2. The court excluded the opinions expressed in the appraisal because it was redacted. *Id.* The court, therefore, will not exclude Schultz's surviving opinion simply because it was originally found in an investigation report. So long as Schultz's opinions satisfy Rule 702, the original intent of the report is not sufficient grounds for its exclusion.

## III.   LEGAL CONCLUSIONS

Finally, MCF argues that Schultz's disclosed opinions should be excluded because they violate the prohibition against expert testimony "that merely tells the jury what result they should reach." *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993). MCF contends that Schultz violates this rule against providing legal conclusions by opining that "[t]he standard in the meat industry is as long as processing the same species of animal, a complete breakdown cleaning is not mandatory." But the standard in the meat processing industry for cleaning equipment is not an ultimate issue in this litigation. Because this opinion does not tell the jury what conclusion it should reach on any of MCF's claims, it is not a prohibited legal conclusion.

## CONCLUSION

The court grants in part and denies in part MCF's motion to exclude expert testimony. Schultz may not testify about any of the opinions disclosed in his expert reports except for conclusion 6 of the July 2022 report.

DATED September 28, 2023.

BY THE COURT

Jill N. Parrish
United States District Court Judge

9